**HASSELL CONSTRUCTION COMPANY, INC.,**
Appellant,

v.

**STATURE COMMERCIAL COMPANY, INC.,** Appellee.

No. 14–04–00259–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 17, 2005.

Ron Ramey, Houston, for appellant.

William S. Chesney, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant Hassell Construction Company appeals a take-nothing judgment following a bench trial against Stature Commercial Company. We reverse.

## Background

In mid- to late 2000, Hassell Construction Company subcontracted with Stature Commercial Company, Inc. (SCCI) to perform certain construction work on the building of the Memorial Villages Police Facility. In 2003, the owner of the project, Memorial Villages Police Department, became dissatisfied with SCCI's performance and discontinued its relationship with SCCI. SCCI's bonding company took over completion of the project. Hassell sued SCCI, claiming SCCI owed it $40,300.11 for work performed and $22,121.00 in withheld retainage.[1] At trial, over Hassell's objections, SCCI introduced evidence that it had not been paid by the owner for work done by Hassell. According to SCCI, the contract required that Hassell would not be due funds until SCCI had been paid by the owner. After a one-day bench trial, the trial court issued findings of fact and conclusions of law, including the following:

### FINDINGS OF FACT

\* \* \*

9. Hassell testified, and the SUBCONTRACT provides, that Hassell had agreed with [SCCI] that "payments shall be due Hassell for work that had been approved by the Owner". [SIC]

10. Hassell testified, and the SUBCONTRACT provides, that Hassell had agreed with [SCCI] that payments shall be due subcontractor for work "for which payment has been made to [SCCI] by Owner". [SIC]

11. Hassell testified, and the SUBCONTRACT provides, that Hassell had agreed with [SCCI] that payments shall be due within ten (10) working days following receipt of payment from Owner by [SCCI]." [SIC]

\* \* \*

### CONCLUSIONS OF LAW

\* \* \*

4. [SCCI] has not received any monies from the Owner for the work Hassell performed and seeks payment by its suit.

5. Pursuant to the terms of the SUBCONTRACT, Hassell is not entitled to any recovery from [SCCI] on its claims.

6. Hassell shall take-nothing on its claims from [SCCI].

Appellant raises seven issues: whether the trial court properly applied Rule 54 of Texas Rules of Civil Procedure; whether the trial court improperly based its findings on evidence disallowed by Texas Rule of Civil Procedure 94; whether the trial court properly applied Texas law regarding contracts, covenants, and conditions precedent; whether sufficient evidence existed for the court's findings of fact numbers nine, ten, and eleven; whether the court improperly failed to award appellant the retainage owed to it by appellee; and whether the court erred in failing to make a finding of reasonable and necessary attorneys' fees. Finding insufficient evidence for the trial court's findings, we reverse.

---

1. Retainage is money withheld by contractors from subcontractors' payment on construction projects. The money is withheld as a good-faith incentive for subcontractors to complete the job and is paid upon completion of a project. See www.burger.com/retnage.htm.

### Rule 94 and Evidence Supporting an Affirmative Defense

■■■ We first address appellant's second issue challenging the trial court's application of the procedural requirement for specific pleading of certain defensive matters. Under Rule 94 of the Texas Rules of Civil Procedure, parties must plead affirmative defenses such as "payment, release, . . . and any other matter constituting an avoidance or affirmative defense." Tex.R. Civ. P. 94. In a contract dispute, Texas law makes certain requirements of each party, including the specific pleading of excuses for nonperformance:

> The burden of proving the happening of a contingency which, by the terms of the contract, would discharge the party from liability, or any default or refusal to perform on the part of the plaintiff that would excuse the performance by the defendant, is on the party who seeks to avoid the contract or excuse a failure to perform it on that ground. As a general rule there must be specific pleading of excuses for nonperformance.

*Howell v. Kelly,* 534 S.W.2d 737, 740 (Tex. Civ.App.-Houston [1st Dist.] 1976, no writ) (citations omitted).

■■■ An affirmative defense is defined as "a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings." *Bracton Corp. v. Evans Constr. Co.,* 784 S.W.2d 708, 710 (Tex.App.-Houston [14th Dist.] 1990, no writ). An affirmative defense allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail; it does not rebut the factual proposition of the plaintiff's pleading. *Heggy v. Am. Trading Employee Ret. Account Plan,* 123 S.W.3d 770, 778 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). All affirmative defenses are waived when the defendant files only a general denial, and, absent trial by consent, failure to plead a matter of affirmative defense will preclude a defendant from asserting it. *Bracton Corp.,* 784 S.W.2d at 710.

■■■ In this case, SCCI's reliance on nonpayment from the owner as a basis for non-liability under the contract is an affirmative defense under Texas Rule of Civil Procedure 94. SCCI's original answer contained only a general denial and did not enumerate any specific affirmative defenses. At trial, SCCI did not contest the fact that it owed appellant for its completed work and for retainage; however, SCCI argued that it was not legally required to pay appellant. SCCI's trial counsel's opening remarks included the following:

> It is not a fact of [SCCI] not wanting to pay [appellant], but indeed the subcontracted money was never paid to [SCCI] by the Owner. And therefore, pursuant to the terms of the contract on their face we have no legal obligation to pay this subcontractor unless we are paid by the Owner of the property, and that's specific in the contract terms which we will go over. That's why we're not disputing how much the gentleman is owed, anything like that.

During the trial, appellant's counsel properly objected when SCCI's counsel attempted to introduce evidence of: 1) the contract language delaying payment of the subcontractor until the contractor had been paid; and 2) the fact that the contractor had not been paid by the owner. The trial judge overruled both objections. SCCI's counsel did not request a trial amendment of its original answer. We therefore hold that the trial court erred in admitting the evidence. Appellant's second issue is sustained.

### No Evidence

In his fourth issue, appellant challenges the sufficiency of the evidence to support

the trial court's findings of fact nine, ten, and eleven. In his fifth issue, appellant argues that the trial court erred in failing to award him his retainage. As a result of our sustaining appellant's second issue above, we agree with both contentions.

A trial court's findings of fact are reviewed for sufficiency of the evidence under the same legal standards as are applied to the review of jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 771 (Tex. 1996) (per curiam). We utilize the normal standards of review when considering a no-evidence challenge. *See Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002). A no-evidence point will be sustained when there is a complete absence of evidence of a vital fact; the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; the evidence offered to prove a vital fact is no more than a mere scintilla; or the evidence conclusively establishes the opposite of the vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

Here, the Texas Rules of Civil Procedure generally, and Rule 94 specifically, prevent us from giving weight to the only evidence offered to prove a vital fact, that is, SCCI's affirmative defense that the contract did not allow for appellant to be paid until SCCI had been paid by the owner. Thus, there is no evidence to support the trial court's findings of fact nine, ten, and eleven. Without this evidence, a careful review of the record shows that there is no evidence controverting appellant's prima facie case that SCCI owes appellant $40,300.11 for unpaid invoices and $22,121.00 for retainage. Therefore, appellant established its entitlement to the retainage as a matter of law. *See Dow*

*Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam). Accordingly, appellant's fourth and fifth issues are sustained.

## Attorney's Fees

In his sixth issue, appellant argues that the trial court erred in failing to find the amount of reasonable attorney's fees for plaintiff's counsel. Section 38.001 of the Civil Practice and Remedies Code allows for the recovery of reasonable attorney's fees if the claim is for, among other things, a written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2003). Under Texas law, the award of fees to a plaintiff recovering on a valid contract claim is mandatory under Section 38.001 if there is proof of the reasonableness of attorney's fees. *Budd v. Gay*, 846 S.W.2d 521, 524 (Tex.App.-Houston [14th Dist.] 1993, no writ); *see also Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). While a trial court has the discretion to set the *amount* of an attorney's fees, it does not have the discretion to deny the fees altogether if they are proper under Section 38.001. *Budd*, 846 S.W.2d at 524. It is presumed that usual and customary attorney's fees are reasonable; however, this presumption may be rebutted. *Id.*

The cause of action in this case was based on a written contract between appellant and SCCI. In its original petition, appellant requested an award of reasonable attorney's fees. At trial, appellant's counsel, Ron Ramey, testified that, given his hourly rate, the amount of work he had performed, and the amount of work he expected to perform subsequent to the trial, the amount of his reasonable fees would be $5,758.50.[2] Ramey introduced as an

---

2. Ramey testified that he had already performed $4,183.50 worth of work and estimated that he would perform another $1,575.00 in the trial portion of the case.

exhibit the bill for his total legal services up to that point in the trial and also testified that a reasonable amount for possible appeals to the court of appeals and the supreme court would be $2,250 for each level of appeal. SCCI's counsel made no objection to Ramey's exhibit and it was admitted by the court. The only question on SCCI's cross-examination of Ramey regarded the speculative nature of the estimates for the amounts for appeals in the case; appellee's counsel did not question the reasonableness of Ramey's fees, and he did not introduce any rebuttal evidence.

In findings of fact numbers twelve and thirteen, the trial court found the amount of reasonable appellate attorney's fees, but did not include an amount of fees necessary for trial. The amount found by the trial court for appeals to the court of appeals and the supreme court identically matched the amount estimated by Ramey at trial, that is, $2,250 for each level of appeal. In its conclusions of law numbers six and seven, the trial court found that appellant was not entitled to recovery from SCCI and that it should "take-nothing" on its claims. We find that the trial court was required to find an amount for reasonable attorney's fees. *Budd,* 846 S.W.2d at 524. Although the trial court did find appellate attorney's fees, we find that its failure to award fees for appellant's counsel's trial work amounts to an improper denial under Section 38.001. *Id.* Appellant's sixth issue is sustained.

Having sustained appellant's issues two, four, five, and six, we reverse the judgment of the court below. Because of our disposition, we need not discuss appellant's first and third issues. We reverse the judgment of the trial court, render judgment in favor of appellant in the amount of $62,421.11, and remand the case to the trial court for entry of a new judgment consistent with this opinion, including a finding of the total amount of attorney's fees to be awarded to appellant and all such pre-and post-judgment interest as may be required by law.