Opinion issued May 15, 2008













     




In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00846-CV




ARCO CONSTRUCTION COMPANY, INC., Appellant

V.

AMERICON SERVICES COMPANY, INC., Appellee




On Appeal from County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 825,594




MEMORANDUM OPINION

          Appellant, general contractor ARCO Construction Company, Inc., hired
appellee, subcontractor Americon Services Company, Inc., to perform site work on
a commercial construction project, pursuant to a written contract. When Americon
did not receive payment as expected, it sued ARCO for breach of contract, failure to
comply with payment obligations under Texas Property Code section 28.002 (“the
Prompt Payment Act”), quantum meruit, sworn account, and trust fund violations. 
A jury found that ARCO violated the Prompt Payment Act by failing to timely pay
sums due and awarded Americon: $61,417.70, plus interest and attorney’s fees. See
Tex. Prop. Code Ann. § 28.002 (Vernon 2000). The jury found that Americon
breached the contract but that its breach was excused, and the trial court rendered
judgment that ARCO take nothing by its counterclaims.
           In five issues, ARCO contends that the trial court erred (1) by granting relief
under the Prompt Payment Act; (2) by “fail[ing] to award ARCO the damages
awarded by the jury for Americon’s breach of contract”; (3) by “allowing Americon
to draw adverse inferences” from ARCO’s redactions to its admitted bills for
attorney’s fees; (4) by failing to properly apply the parties’ stipulated attorney’s fees;
and (5) by concluding that Americon was entitled to recover on its alternative
theories.
          We affirm.
 
 
Facts and Procedural History
          In 2003, TMT Properties hired ARCO, a Missouri-based commercial general
contractor, to construct offices and a warehouse on property owned by TMT in
Houston, Texas, for $5,100,000 (“the Project”). ARCO subcontracted with Americon
to perform the site work on the Project for $359,000.
          Pursuant to the terms of the subcontract between ARCO and Americon (the
“Contract”), Americon was required to, inter alia, identify its subcontractors and
material suppliers; to provide valid lien waivers prior to payment; and to “protect and
fully indemnify [TMT and ARCO] against all liability for claims and liens for labor,
materials, appliances, equipment, and supplies whatsoever, including any costs,
attorney’s fees, and incidental and consequential damages resulting therefrom.”
          Americon subcontracted with C.M. Nunez Trucking Company (“Nunez”) to
haul dirt for the Project. At the conclusion of the Project, in November 2003,
Americon submitted payment to Nunez in exchange for a lien waiver. Americon
drafted the lien waiver for $72,096, the amount it owed Nunez on the Project;
however, Americon drafted its check to Nunez for only $55,800. Americon took a
set-off of $16,296 from its payment to Nunez because Nunez allegedly owed this sum
to Americon on a prior, unrelated project. Nunez signed the lien waiver and then
discovered the discrepancy in the amount of the check. On December 29, 2003,
Nunez sent to ARCO a notice of intent to file a lien on the TMT property.
          Nunez had obtained the dirt it hauled to the Project from Prime Tree &
Landscaping, Inc., d/b/a Mulch Matters (“Mulch”). Americon was unaware of
Mulch’s participation in the Project and therefore did not identify Mulch as a
subcontractor in the Contract. ARCO and Americon believed that Nunez was
providing the dirt for the Project. By the end of the Project, Nunez had failed to pay
Mulch the sum of $53,161.48. On January 6, 2004, Mulch sent to ARCO a notice of
intent to file a lien on the TMT property. 
          By January 15, 2004, both Nunez and Mulch had filed liens with Harris County
on the TMT property. On January 26, 2004, Mulch filed suit against ARCO and
TMT to foreclose its lien. 
          On February 19, 2004, ARCO sent written assurances to TMT that ARCO
would defend and indemnify TMT against the liens and lawsuit, pursuant to the
general contract. In addition, ARCO, through its Missouri legal counsel, sent a
demand to Americon that Americon protect and indemnify ARCO from the liens and
lawsuit, pursuant to the Contract. ARCO also notified Americon that it was incurring
legal expenses and that these expenses would substantially increase over time. 
          On February 20, 2004, Americon, through its counsel, Christian, Smith, &
Jewell (“Christian”), responded that it was “evaluating whether [it] will assume the
defense of ARCO in those matters involving Mulch Matters and Nunez Trucking.” 
          On March 4, 2004, ARCO, through its Texas counsel, Beirne, Maynard &
Parsons, L.L.P. (“Beirne”), answered the Mulch lawsuit. On March 8, 2004, ARCO,
requested “bond-around relief” from Americon, in addition to the defense and
indemnity under discussion. On March 16, 2004, ARCO sent a letter to Mulch
confirming that Mulch would not attempt extra-judicial foreclosure of its lien. On
March 17, 2004, ARCO emailed Americon to confirm that Americon had everything
it needed to assume the defense of ARCO and again requested bond-around relief. 
On March 30, 2004, ARCO demanded written notification that Americon would
assume the defense of ARCO and would provide indemnity and bond-around relief. 
In addition, ARCO inquired regarding where to send Beirne’s fee billing. 
          On March 31, 2004, Americon notified ARCO that it was “not disputing its
obligation to indemnify or to defend under the [Contract],” that it was working to
resolve the matter, and that it anticipated that it would be able to resolve the matter
by April 5, 2004. 
          On April 6, 2004, Americon sent a letter to Nunez, indicating that Americon
would send payment for the $16,296 that had been withheld, to be held in trust by
Nunez’s counsel, in exchange for the release of the Nunez and Mulch liens and the
dismissal of the Mulch suit. In addition, Americon notified ARCO that the liens
would be released “within ten days.” 
          Several times in the days that followed, ARCO contacted Americon regarding
the release of the liens and advised that, if the liens were not released as promised,
ARCO would be forced to proceed to protect its interest at Americon’s expense.
Again, ARCO asked for firm acceptance of the defense and inquired where to send
the attorney’s fees billing.
          On April 19, 2004, Americon sent payment of $16,296 to counsel for Nunez. 
Nunez, however, could not pay the $53,161.48 owed to Mulch, so Mulch did not
release its lien or dismiss its suit.
          On May 24, 2004, ARCO again demanded that Americon secure the release of
the liens and execution of a notice of non-suit with prejudice; give instructions on
where to send fee billing, and give a written basis for Americon’s continued failure
to formally assume the defense and indemnification of ARCO. ARCO advised
Americon that it was being forced to bond around the liens to mitigate damages
associated with the imminent refinancing of the construction loan and that ARCO
would seek to hold Americon liable for these costs and any associated damages
arising from the delay. ARCO also advised Americon that TMT was holding the
$510,000 retainage under the general contract because of the liens and that Americon
may be held responsible for any loss of the retainage, as well as associated damages.
          On May 26, 2004, Americon agreed to bond around the liens by the following
day, and Nunez offered to try to pay the $53,161.48 it owed to Mulch in exchange for
Mulch’s release of lien and dismissal of suit. The next day, however, Americon had
not bonded around the liens, and Nunez had not paid Mulch. In the days that
followed, ARCO sent correspondence to Americon, Nunez, and Mulch to ascertain
the status of the bond and of the settlement with Mulch. 
          On June 1, 2004, by Rule 11 Agreement, Americon agreed to pay, on behalf
of Nunez, the $53,161.48 owed to Mulch in exchange for the release of the Mulch
lien and dismissal of the Mulch suit. On June 2, 2004, Americon paid Mulch, and
Nunez and Mulch released their liens on the TMT property. On June 9, 2004, Mulch
dismissed its suit.
          On June 18, 2004, Americon demanded the balance owed from ARCO under
the Contract. ARCO responded that the defense and indemnity matters remained
outstanding. Specifically, ARCO contended that it had “incurred approximately
$10,200 thus far in the defense of the liens filed” by Mulch and Nunez, and had
incurred $6,000 in extra financing costs as a result of the liens. Americon demanded
detailed billing statements, contending that the fees were excessive for “filing two
general denials to a suit to foreclose a mechanic’s lien.” Americon asserted that its
own counsel, Christian, had negotiated the release of liens and that “no real work
needed to be expended by ARCO in defense of this case.”
          On August 27, 2004, ARCO responded that the remainder due to Americon
under the Contract was $61,417.70; however, because Americon had declined to
defend and indemnify ARCO in these matters, ARCO would withhold $32,444.93 in
reasonable and necessary attorney’s fees, as well as costs, yielding $28,972.77. 
ARCO wrote, “Upon receipt from [Americon] of a final waiver of lien letter, ensuring
[ARCO] that there are no other outstanding liens or unpaid debt related to this
project,”ARCO would forward a check for $28,972.77. ARCO attached partially
redacted copies of billing from its Missouri counsel and from Beirne. On September
24, 2004, ARCO sent a check for $28,972.77 to Americon, with a letter stating,
“ARCO is more than willing to send you this balance, provided you sign a final
waiver of lien and warrant that there are no other claims outstanding.” In addition,
ARCO stated that the enclosed check was in “full satisfaction of ARCO’s subcontract
with Americon.” 
          On October 11, 2004, Americon responded that, pursuant to the Prompt
Payment Act, ARCO was required to immediately release payment of the undisputed
sum owed on the Contract and that ARCO could not condition Americon’s receipt of
that sum on Americon’s total release of any further claim to the disputed portion. 
Americon offered to give a partial lien waiver, covering only the $28,972.77. On
October 27, 2004, Americon sued ARCO, asserting claims for breach of contract,
breach of payment obligation under the Prompt Payment Act, quantum meruit, sworn
account, and trust fund violations.
          On November 3, 2004, ARCO responded that Americon could cash the check
without providing lien waivers because the time period for filing liens, under the
Texas Property Code, had expired; however, the payment of $28,972.77 would be
considered in full satisfaction of the debt.
          On May 1, 2006, the matter was tried to a jury. The jury found that ARCO had
failed to comply with its obligations under Prompt Payment Act, which was not
excused by a good-faith dispute; had failed to comply with the terms of the Contract
by failing to pay Americon the undisputed portion of the amount owed; had
misapplied trust funds, which was not excused; and that Americon was entitled to
recover from ARCO $61,417.70 in damages. 
          In addition, the jury found that, although Americon had failed to comply with
the Contract by failing to provide lien waivers, its failure was excused by ARCO’s
waiver of compliance, which was not barred by Americon’s unclean hands. The jury
found that ARCO was entitled to recover $16,222.47 as reasonable and necessary
attorney’s fees incurred in defending against the Mulch litigation and liens; $1,370.00
as incidental damages; and $6,753.00 in consequential damages. However, the jury
also found that Americon’s failure to defend and indemnify was excused by
substantial performance. The jury did not find that Americon’s failure to comply was
material.
          The trial court entered judgment that Americon recover from ARCO the sum
of $61,417.70; pre-judgment interest on that amount at 18 percent; post-judgment
interest at 8 percent; attorney’s fees of $85,699.74 plus interest, together with
appellate attorney’s fees as set forth in the record, to be awarded to Americon if
Americon is successful on appeal. In addition, the trial court ordered that ARCO take
nothing by its claims against Americon.
          Subsequently, ARCO filed a motion for judgment notwithstanding the verdict
and motion to disregard the jury’s answers, which the trial court denied. Further,
ARCO filed a motion for new trial and motion to modify the judgment, which the trial
court denied. This appeal ensued.
Prompt Pay ActThe jury found that ARCO failed to comply with its prompt payment
obligations and that its failure to comply was not excused by a good-faith dispute. 
In its first issue, ARCO contends that the trial court erred by entering judgment on the
jury’s verdict granting Americon relief under the Prompt Payment Act. ARCO
contends that the Act, “applies only when the right to receive payment is undisputed
and when the delay in payment does not result from a good faith dispute.” ARCO
first contends that, here, although it is undisputed that Americon performed its site
work satisfactorily, there is a good faith dispute concerning Americon’s failure to
comply with the terms of the Contract requiring it to defend and indemnify ARCO
from any liens or claims, and this dispute rendered the Act inapplicable. Next, ARCO 
contends that it fully complied with the Prompt Payment Act.
A.      Applicability of the Prompt Payment Act
          This case involves interpreting the Prompt Payment Act, and, therefore, we
apply a de novo standard. City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25
(Tex. 2003). We construe the statute as written and must, if possible, determine the
legislature’s intent from the language that was used in the statute. Id. When
determining legislative intent, the entire act, not isolated portions of the act, must be
considered. Id. We look to the plain meaning of the words used in the statute and,
if the meaning is unambiguous, interpret the statute so that it comports with the plain
meaning expressed. Id.
          Texas Property Code section 28.002 provides for prompt payment to
contractors and subcontractors, as follows:
(a) If an owner or a person authorized to act on behalf of the owner
receives a written payment request from a contractor for an amount that
is allowed to the contractor under the contract for properly performed
work or suitably stored or specially fabricated materials, the owner shall
pay the amount to the contractor, less any amount withheld as authorized
by statute, not later than the 35th day after the date the owner receives
the request. 
(b) A contractor who receives a payment under Subsection (a) or
otherwise from an owner in connection with a contract to improve real
property shall pay each of its subcontractors the portion of the owner’s
payment, including interest, if any, that is attributable to work properly
performed or materials suitably stored or specially fabricated as
provided under the contract by that subcontractor, to the extent of that
subcontractor’s interest in the owner’s payment. The payment required
by this subsection must be made not later than the seventh day after the
date the contractor receives the owner’s payment. 
(c) A subcontractor who receives a payment under Subsection (b) or
otherwise from an contractor in connection with a contract to improve
real property shall pay each of its subcontractors the portion of the
payment, including interest, if any, that is attributable to work properly
performed or materials suitably stored or specially fabricated as
provided under the contract by that subcontractor, to the extent of that
subcontractor’s interest in the owner’s payment. The payment required
by this subsection must be made not later than the seventh day after the
date the contractor receives the owner’s payment.

 

Tex. Prop. Code Ann. § 28.002. The plain language of section 28.002 demonstrates
that its purpose is to ensure that contractors and subcontractors are promptly paid for
valuable services and materials provided. See Interstate Contracting Corp. v. City
of Dallas, 135 S.W.3d 605, 620 (Tex. 2004) (noting that Texas contractors are
statutorily required to promptly pay subcontractors proportionately from any amount
paid by owner and attributable to work performed under subcontract).

 
          Section 28.003 provides, in relevant part, that a good-faith dispute suspends
these deadlines, as follows: 

(b) If a good faith dispute exists concerning the amount owed for a
payment requested or required by this chapter under a contract for
construction of or improvements to real property, excluding a detached
single-family residence, duplex, triplex, or quadruplex, the owner,
contractor, or subcontractor that is disputing its obligation to pay or the
amount of payment may withhold from the payment owed not more than
100 percent of the difference between the amount the obligee claims is
due and the amount the obligor claims is due. A good faith dispute
includes a dispute regarding whether the work was performed in a
proper manner. 

 
Tex. Prop. Code Ann. § 28.003(b). The plain language of section 28.003(b)
demonstrates that its purpose is to protect a party from having to make payment under
a contract when there is a good faith dispute regarding the obligation. See id. Such
dispute includes, but is apparently not limited to, issues regarding work performance. 
Id.

          The Act also provides that an amount withheld under this chapter begins to
accrue interest on the day after the date on which the payment becomes due and bears
interest at one-and-one-half percent each month. Id. § 28.004. A person may bring
an action to enforce rights under this chapter, and the court may award costs and
reasonable attorney’s fees as the court deems equitable and just. Id. § 28.005. 
Finally, the Act provides that it may not be interpreted to void a subcontractor’s
entitlement to payment for properly performed work. Id. § 28.007.

          Construing the Prompt Payment Act as a whole, as we must, its purpose is not
only to ensure that contractors and subcontractors are promptly paid for valuable
services and materials provided, but also to allow certain sums to be withheld from
payment when those sums are the subject of a “good-faith dispute,” pending
resolution of that dispute. Otherwise, for instance, a contractor could enjoy delayed
payment of a substantial sum owed under a subcontract by raising dispute with a
smaller portion of the subcontractor’s work. Clearly, this is the type of danger that
the Prompt Payment Act is designed to protect against. See id. §§ 28.003 (permitting
contractor to withhold only those sums that are subject of good-faith dispute), 28.007
(providing that Act may not be interpreted to void subcontractor’s entitlement to
payment for properly performed work).

          We conclude that the dispute at issue in the instant case, namely, whether there
was a failure by ARCO to comply with the terms of the Contract, does not render the
Prompt Payment Act inapplicable; rather, the situation presented herein represents the
type of circumstance that the Act contemplates. The Act governs the timing of
payment of undisputed funds to Americon and provides relief for ARCO in the form
of allowing it to withhold funds that are the subject of a “good-faith dispute,” pending
resolution of the dispute. 

 
B.      Compliance with the Prompt Payment Act

          Next, ARCO contends that it fully complied with the Prompt Payment Act.
ARCO presents its contention as a challenge to the legal sufficiency of the evidence
to support the jury’s finding that ARCO failed to comply with its obligations under
the Prompt Payment Act. Specifically, ARCO contends that the evidence
conclusively establishes the opposite of a vital fact; namely, it establishes that ARCO
complied with its obligations under the Prompt Payment Act.

          In deciding a legal-sufficiency challenge, we determine whether there is
evidence that would enable reasonable and fair-minded people to reach the verdict
under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). To make
this determination, we (1) credit all favorable evidence that reasonable jurors could
believe; (2) disregard all contrary evidence, except that which they could not ignore;
(3) view the evidence in the light most favorable to the verdict; and (4) indulge every
reasonable inference that would support the verdict. Id. If the evidence allows only
one inference, we may not disregard it. Id. at 822.

          A no-evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact; (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). A matter is conclusively established
by the evidence only if reasonable people could not differ in their conclusions. City
of Keller, 168 S.W.3d at 816.

          a.       The undisputed funds

          Under the Prompt Payment Act, ARCO was required to pay Americon the
undisputed portion of the amount due under the Contract “not later than the seventh
day after the date [ARCO] receive[d] [TMT’s] payment.” See Tex. Prop. Code Ann.
§ 28.002(b). The trial court’s judgment seems to reflect that it found that payment
was due on July 1, 2004.

           ARCO contends that it complied with the Prompt Payment Act when it
tendered the undisputed portion of the sums due, which was $28,972, to Americon
in September 2004. See id. § 28.002. The record shows that, on September 24, 2004,
ARCO tendered to Americon a check for $28,972. However, ARCO placed a
condition on cashing the check, namely, that Americon first provide ARCO with a
final total lien waiver. The record shows that, on November 3, 2004, ARCO granted
permission for Americon to cash the check without the necessity of providing a lien
waiver because the time to file a lien under the Property Code had expired; however,
ARCO maintained that the check would be considered by ARCO to be full
satisfaction of ARCO’s debt to Americon under the Contract. ARCO contends that
nothing in the Act prevented it from conditioning payment of the undisputed funds
on a total release by Americon of the disputed funds. We disagree.

          We have concluded that a contractor is statutorily required under the Prompt
Payment Act to timely pay its subcontractors and that the Act permits a contractor to
withhold only those sums that are the subject of good-faith dispute. See Tex. Prop.
Code Ann. §§ 28.002, .003. Further, contractors are prohibited from using Chapter
28 to void a subcontractor’s entitlement to payment for properly performed work. Id.
§ 28.007.

          We cannot conclude, as ARCO urges, that the Act should be construed to
permit a contractor to use its statutorily required payment of undisputed sums under
section 28.002 as leverage to force the relinquishment of any claim that the
subcontractor may have to the disputed funds—those purportedly withheld by the
contractor under the good-faith dispute exception in section 28.003—without any
resolution of the dispute. 

          The record shows that, at the time of trial, in May 2006, the total sum owed to
Americon under the Contract remained outstanding. With regard to the undisputed
portion, we cannot conclude, as ARCO urges, that the evidence conclusively shows
that it complied with the Act or that reasonable people could not differ in their
conclusions. See City of Keller, 168 S.W.3d at 816. We conclude that the evidence
supports the jury’s verdict and the judgment entered by the trial court on that verdict
that ARCO did not comply with the deadlines under the Prompt Payment Act
regarding payment of the undisputed $28,972.70 due to Americon under the Contract.

          b.       The disputed funds 

          ARCO contends that it complied with section 28.003 of the Prompt Payment
Act when it withheld from Americon $32,444.93, or 100 percent of the difference
between the amount Americon claimed was due and the amount that ARCO claimed
was due, because this sum was the subject of a “good-faith dispute.” See Tex. Prop.
Code Ann. § 28.003(b). 

          The record shows that Americon acknowledged that it had a duty to protect and
indemnify ARCO under the Contract, and that Americon owed ARCO reasonable and
necessary attorney’s fees and costs. The parties dispute whether the sum that ARCO
withheld for its attorney’s fees and costs is fully the subject of a “good-faith dispute,”
as required to support withholding under section 28.003. See id. The jury answered
that it was not. ARCO challenged the jury’s finding in its motion for judgment
notwithstanding the verdict and motion for new trial.

          Section 28.003(b) permits the withholding of “not more than 100 percent of the
difference between the amount the obligee [here, Americon] claims is due and the
amount the obligor [here, ARCO] claims is due.” Id. (emphasis added). The record
shows that, at the time of trial, ARCO had not successfully paid to Americon any
portion of the $61,714.70 owed under the Contract. From this evidence, the jury
could have reasonably concluded that ARCO withheld more than 100 percent of the
funds in dispute and, therefore, did not comply with the Prompt Payment Act.

          ARCO contends that it did not withhold more than 100 percent of the amount
in dispute because it tendered the undisputed portion to Americon, but Americon
refused to accept the funds. As discussed above, the record shows that ARCO
tendered payment to Americon for $28,972.70, but initially conditioned its tender on
Americon providing a lien release covering the entire $61,714.77. Americon offered
a partial lien waiver, to cover only the $28,972.70, which ARCO did not accept.
Shortly thereafter, with the time period for filing a lien having expired, ARCO
asserted that its tender would be considered “full satisfaction” of the $61,714.70 debt. 
Americon contends that, by cashing the check under ARCO’s condition of
satisfaction, Americon risked waiving its claim to the disputed funds. We agree. See,
e.g., Ostrow v. United Bus. Machs., Inc., 982 S.W.2d 101, 104 (Tex. App.—Houston
[1st Dist.] 1998, no pet.) (discussing accord and satisfaction, and explaining that
when check is tendered with conditions regarding existing obligation or dispute,
contract to discharge debt forms upon cashing check). From this evidence, we
conclude that the jury could have reasonably concluded that, by withholding more
than section 28.003(b) allows a contractor to withhold, ARCO did not comply with
the Prompt Payment Act with regard to the disputed funds. 

          Further, the record shows that the Nunez and Mulch liens were released on
June 2, 2004 and that the Mulch lawsuit was dismissed June 9, 2004. Weeks later,
on June 25, 2004, ARCO stated that it had “incurred approximately $10,200 thus far
in defense of the liens filed by Nunez Trucking and Mulch Matters against the above-mentioned property,” and that, “[a]lso outstanding is the reimbursement of $6,000 in
extra financing costs incurred as a result of the liens filed.” The record shows,
however, that two months later, on August 27, 2004, ARCO asserted that its
attorney’s fees and costs for Americon’s “conduct” and “failure to defend and
indemnify” had tripled to $32,444.93. 

          Gregory Ancel, Regional Manager of the St. Louis Division of ARCO, testified
that the amount withheld was for ARCO’s attorney’s fees, litigation expenses, bonds,
and Americon’s failure to produce lien waivers. Andrew Parma, attorney for
Americon, testified that these amounts would have been known by the June 25, 2004
letter and that there was no legal work left to be done between June 25, 2004 and
August 27, 2004. Viewing this evidence in the light that supports the verdict, we
conclude that the jury could have reasonably concluded that the sum withheld by
ARCO, $32,444.93, was not the subject of a dispute in “good-faith.”

          We cannot conclude, as ARCO urges, that the evidence conclusively shows
that it complied with the Act or that reasonable people could not differ in their
conclusions. See City of Keller, 168 S.W.3d at 816. We conclude that the evidence
supports the jury’s verdict and the judgment rendered by the trial court on that
verdict.

          In sum, we hold that the evidence is legally sufficient to support the trial
court’s rendition of judgment on the jury’s finding that ARCO failed to comply with
the Prompt Payment Act.

          Accordingly, ARCO’s first issue is overruled.

Breach of ContractIn its second issue, ARCO contends that the trial court erred “when it failed to
award ARCO the damages awarded by the jury for Americon’s breach of contract.” 
Specifically, ARCO contends that, “[i]n response to Question No. 5, the jury found
that Americon had failed to comply with [the Contract] in five respects, and that
ARCO was entitled to damages in its answer to Question No. 7.” ARCO contends
that the judgment, however, “erroneously fails to award ARCO any damages under
this finding” and that “as a matter of law, ARCO is entitled to an award of damages
under these jury findings.” A close reading of the jury’s answers, however, shows the
contrary.

          First, in question number five, the jury found that Americon failed to comply
with the Contract, as follows:

Did Americon fail to comply with the Subcontract Agreement as set
forth below?

          . . . .

          (a)     Did Americon fail to pay all of its subcontractors or material
suppliers as required by the subcontract agreement? No 

          (b)     Did Americon fail to furnish all suppliers’ lien waivers under
paragraph 1(h) of the Subcontract Agreement? Yes 

          (c)     Did Americon fail to furnish lien waivers for itself or for all its
material suppliers and subcontractors for material and labor under
paragraph 7 of the Subcontract Agreement? Yes 

          (d)     Did Americon fail to supply ARCO with all proper material
and/or subcontractor affidavits or lien waivers under paragraph
13, Exhibit A of the Subcontract Agreement? Yes 

          (e)     Did Americon fail to protect and indemnify T.M.T. Properties and
ARCO against all liability for claims and liens for labor and
materials whatsoever including any costs, attorneys’ fees and
incidental and consequential damages resulting therefrom under
paragraph 4 of the Subcontract Agreement? Yes 

          (f)      Did Americon fail to list or provide written changes to list all
material suppliers and subcontractors in paragraph 13; Exhibit A
to the Subcontract Agreement? Yes 

 
The jury did not find that Americon’s failure to comply was material.  

          In question number five, subparts (b), (c), and (d), the jury found that Americon
failed to comply with the Contract by failing to supply ARCO with lien waivers. In
question number six, however, the jury answered that Americon’s failure to comply
with the Contract, as found in question five, subparts (b), (c), and (d), was excused
by ARCO’s waiver of compliance in these matters. ARCO does not challenge these
findings on appeal.

          In question number seven, the jury was asked to consider what sums, if any,
would fairly and reasonably compensate ARCO for its damages, if any, that resulted
from Americon’s failure to comply. The remaining compliance issues from question
number five were subpart (e), failure to defend and indemnify, and subpart (f), failure
to list all suppliers. The jury was asked to consider the element of attorney’s fees for
defending the Mulch litigation and lien disputes, to which it answered $16,222.47. 
Next, the jury was asked to consider the element of incidental damages, including
ARCO’s loss of interest on the late payment of retainage due from TMT, to which the
jury answered $1,370.00. Finally, the jury was asked to consider the element of
consequential damages, including ARCO’s lost profits on the Contract, extra
administrative expenses, and expert fees, to which the jury answered, $6,753.00.
ARCO contends that it is entitled to these amounts as damages. 

          In question number eight, however, the jury was instructed that, if it answered
“yes” to any of the subparts in question number five, it should consider whether
“Americon’s failure to comply with the [Contract] was excused.” The jury answered,
“Yes.” Hence, the jury’s answer to this question eliminated the underlying liability
in question number five, subparts (e) and (f), that supported the damages awarded in
question number seven.

          ARCO contends that the jury’s finding in question number eight “is
immaterial” because it constitutes an erroneous application of the law. ARCO
contends that Americon’s conduct could not have been “excused by substantial
performance” because “substantial performance is an equitable cause of action, not
a legal excuse that forgives a party’s breach of contract.” ARCO maintains that it is
entitled to offset Americon’s recovery with the damages awarded to ARCO in
question number seven.

          First, as Americon contends, ARCO does not, on appeal, complain about the
sufficiency of the evidence to support the jury’s determination regarding substantial
performance. ARCO complains only that substantial performance cannot, as a matter
of law, be a defense to a breach of contract action. 

          The doctrine of substantial performance may be asserted as a defense by
contractors in a breach of contract action. See, e.g., Gentry v. Squires Constr., Inc.,
188 S.W.3d 396, 403 n.3 (Tex. App.—Dallas 2006, no pet.) (citing Smith v. Smith,
112 S.W.3d 275, 278–79 (Tex. App.—Corpus Christi 2003, pet. denied)). We hold
that the trial court did not err by rendering judgment in accordance with the jury’s
findings. 

          Accordingly, ARCO’s second issue is overruled.

 
Attorney’s Fees

          In its third issue, ARCO contends that “[t]he trial court committed harmful
error by allowing improper comments and attacks on ARCO’s attorneys’ fees.” 
Specifically, ARCO contends that, during discovery, it provided Americon with
redacted attorney’s fees statements and produced a privilege log that established the
basis for its privilege claims. Americon filed a motion to compel, but never obtained
a ruling on its motion. Consequently, the trial court never ordered that unredacted
billing statements be produced and did not rule that ARCO was prohibited from
asserting attorney-client privilege with respect to the billing statements from Beirne. 
ARCO contends that, at trial, Americon violated Texas Rule of Evidence 513 by
repeatedly attacking ARCO’s redaction of its attorneys’ bills at trial. See Tex. R.
Evid. 513.

          Having concluded in ARCO’s second issue that it is not entitled to the
attorney’s fees awarded in question number seven, we need not reach whether those
fees were improperly reduced through a violation of Rule 513. Accordingly, ARCO’s third issue is overruled.

 
Stipulated Attorney’s Fees

 
          In its fourth issue, ARCO contends that “the trial court’s judgment erroneously
ignores the parties’ stipulations regarding attorneys’ fees.” ARCO contends that “as
the prevailing party on its breach of contract counterclaim, ARCO is entitled to
$109,152.80 in attorney’s fees under Texas Civil Practice and Remedies Code 38.001
and paragraph 4 of [the Contract].”

          The availability of attorneys’ fees under a particular statute is a question of law
for the court. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999). Under
Texas Civil Practice and Remedies section 38.001, the award of reasonable attorneys’
fees to the prevailing party in a breach of contract case is mandatory if there is proof
of the reasonableness of the fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38 .001
(Vernon 1997); Hassell Constr. Co. v. Stature Commercial Co., 162 S.W.3d 664, 668
(Tex. App.—Houston [14th Dist.] 2005, no pet.). The amount of the award lies
within the discretion of the court but it does not have the discretion to deny attorney’s
fees if they are proper. Hassell Constr. Co., 162 S.W.3d at 668.

          Paragraph number four of the Contract provides, in pertinent part,
“Subcontractor further agrees: To protect and fully indemnify [TMT and ARCO]
against all liability for claims and liens for labor, materials, appliances, equipment,
and supplies whatsoever, including any costs, attorney’s fees, and incidental and
consequential damages resulting therefrom.” The record shows that Americon paid
Nunez the sum in dispute and that Americon paid Mulch on behalf of Nunez, thereby
achieving the release of the Nunez and Mulch liens, and the dismissal of the Mulch
suit. The jury initially answered that Americon had failed to comply with certain
terms of the Contract and that ARCO was entitled to damages. The jury did not find
that Americon’s failure to comply was material, however, and the jury subsequently
answered that Americon’s failure to comply was excused. In sum, the trial court did
not award any damages to ARCO on its breach of contract counterclaims.

          To recover attorney’s fee under section 38.001, a party must (1) prevail on a
cause of action for which attorney’s fees are available and (2) recover damages.
Green Intern., Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). Having determined
that ARCO did not prevail on its breach of contract counterclaim, ARCO is not
entitled to attorney’s fees under section 38.001 or paragraph four of the Contract. See
Cytogenix, Inc. v. Waldroff, 213 S.W.3d 479, 489–90 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied); see also Sw. Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d
52, 56 (Tex. 1998) (concluding that plaintiff who recovered no damages could not
recover attorney’s fees); Burgmann Seals Am., Inc. v. Cadenhead, 135 S.W.3d 854,
860–61 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (“The controlling issue
for the recovery of attorney’s fees is not whether the plaintiff is a prevailing party, but
whether the judgment reflects that the plaintiff obtained meaningful relief on his
claims.”).

          Accordingly, ARCO’s fourth issue is overruled.

 
Alternative Theories

          In its fifth issue, ARCO contends that Americon is not entitled to recover under
its alternative theories of recovery. Having concluded that Americon is entitled to
recover under the Prompt Payment Act, we do not reach this issue.

Conclusion

          We affirm the judgment of the trial court. 













                                                             Laura Carter Higley

                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.