**MEMC ELECTRONIC MATERIALS, INC. and MEMC Pasadena, Inc., Appellants,**

v.

**ALBEMARLE CORPORATION, Lexington Insurance Company, and Travelers Property Casualty Group, Appellees.**

No. 01–08–00770–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 13, 2010.

Alan Brandt Daughtry, Richard E. Griffin, Ryan Chadwick, Jackson Walker L.L.P., Houston, TX, for Appellants.

Lyle R. Rathwell, Teresa L. De Ford, Rathwell De Ford & Wallison, The Woodlands, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns whether a party to an indemnification agreement can obtain indemnification for a dispute regarding the scope and meaning of the indemnification agreement, specifically, whether the agreement provides for indemnification of another matter. Appellants, MEMC Electronic Materials, Inc., and MEMC Pasadena, Inc. (collectively "MEMC"), appeal the trial court's rendition of summary judgment in favor of appellees Albemarle Corporation, Lexington Insurance Company, and Travelers Property Casualty group (collectively "Albemarle").

In this appeal following remand of an earlier appeal concerning the same agreement between these two parties, MEMC raises two issues. MEMC contends that the trial court erred by rendering summary judgment in favor of Albemarle by determining that MEMC was not entitled to indemnity or damages for breach of contract and by denying MEMC's motion for summary judgment for indemnity and breach of contract damages. MEMC makes two contentions concerning these two issues. First, MEMC contends it is entitled to damages in the form of attorney's fees for its defense of this suit in which Albemarle sought indemnity from MEMC for Albemarle's indemnification of Ethyl Corporation. Second, MEMC asserts it is entitled to damages for attorney's fees for its defense of the *Damewood* litigation.[1] We conclude that Albemarle does not owe indemnity to MEMC because the indemnity agreement with Albemarle does not provide for attorney's fees in this situation and the request for attorney's fees for MEMC's defense of the *Damewood* litigation was not made in a motion for summary judgment. We affirm.

## Background

Ethyl Corporation ("Ethyl") designed and built a polysilicon manufacturing plant located in Pasadena, Texas. In 1994, Ethyl created Albemarle as a separate company and transferred various businesses, including the plant, to Albemarle's ownership and control. The transfer was under a "Reorganization and Distribution Agreement." Ethyl and Al-

---

1. In *Larry Damewood, Gary Woodard, and Roy Moss v. Ethyl Corporation,* Cause No. 96–38521, in the 189th District Court of Harris County, Texas, three injured Albemarle employees sued Ethyl, Albemarle's parent corporation and MEMC, among others, for injuries sustained in a fire at Albemarle's plant.

bemarle also entered into an "Indemnification Agreement," under which Albemarle agreed to "indemnify, defend and hold harmless Ethyl ... from and against any and all Indemnifiable Losses of the Ethyl Indemnitees arising out of or due to the failure or alleged failure of Albemarle or any of its Affiliates to pay, perform, or otherwise discharge in due course any of the Albemarle Liabilities."

In 1995, Albemarle sold the plant to MEMC pursuant to an "Asset Purchase Agreement." The closing date for the agreement was July 31, 1995. Under a separate agreement, MEMC and Albemarle agreed that Albemarle would continue to operate the plant.

The Asset Purchase Agreement describes the transfer of the plant and other assets and liabilities in Sections 3.3 and 3.4. Some assets and liabilities were specifically excluded from the transfer, and only certain liabilities were assumed by MEMC. Section 3.4(b) specifies that MEMC "shall not assume any other Liabilities of Seller whatsoever" except "those Liabilities specifically assumed" in Section 3.4(a). Section 3.4(a) does not mention the agreement between Ethyl and Albemarle, nor was that agreement a contract that was assumed by MEMC in the accompanying Schedule 3.4(a)(i). The agreement further specified that MEMC did not assume any liability resulting or arising from the operation of the plant prior to the closing date.

Albemarle made certain representations and warranties to MEMC. Under Section 4.16, labeled "Contracts and Commitments," Albemarle represented that, except as set forth in Schedule 4.16, it was "not a party to" and the transferred assets "are not bound by" and the Assumed Obligations "shall not include, any written or oral, formal or informal ... agreements between or among Seller and any Affiliate

of Seller...." Schedule 4.16 did not mention the indemnity agreement between Ethyl and Albemarle.

The Asset Purchase Agreement between Albemarle and MEMC included an indemnity provision. Generally speaking, depending on whether the damages arose out of the operation of the plant "prior to the closing date" or "on or after the closing date," MEMC would indemnify Albemarle for the damages, or Albemarle would indemnify MEMC for the damages. In Section 7.3, Albemarle agreed to indemnify MEMC from and against all damages incurred by MEMC directly or indirectly by reason of or resulting from liabilities, obligations or claims, with respect to the plant arising out of operations of the plant *prior to* the Closing Date. Similarly, Section 7.4 provided that MEMC would indemnify Albemarle from and against all damages asserted against, resulting to, imposed upon or incurred by Albemarle, directly or indirectly by reason of or resulting from liabilities, obligations or claims with respect to the plant arising out of the operations of the plant *on or after* the Closing Date.

In 1996, three Albemarle employees were injured when a fire broke out at the plant. The employees, collectively referred to as the *Damewood* plaintiffs, filed a lawsuit against a number of parties, including Ethyl and MEMC. Albemarle, which carried worker's compensation coverage, was not subject to suit. MEMC settled with the *Damewood* plaintiffs. Of the parties relevant to the present case, only Ethyl went to trial in the underlying litigation. Pursuant to the agreement between Ethyl and Albemarle, Albemarle defended Ethyl in the *Damewood* litigation. At the close of the trial, Ethyl was the only remaining defendant, and a jury rendered a verdict in excess of six-and-a-half million dollars against Ethyl. Ethyl appealed, and while the appeal was pending, it set-

tled with the *Damewood* plaintiffs for approximately five million dollars. Ethyl sought indemnification from Albemarle under the terms of their agreement. Albemarle indemnified Ethyl for its losses, which is the amount that Albemarle now seeks from MEMC in this lawsuit.

MEMC filed for summary judgment, which was denied. Albemarle then filed a motion for partial summary judgment on the issue of whether MEMC was obligated to indemnify Albemarle, and MEMC re-urged its motion as a cross-motion for partial summary judgment. The trial court ruled in Albemarle's favor. The trial court severed the summary judgment order, which was the subject of the prior appeal.

In the prior appeal, this Court held that Albemarle's contractual obligation to indemnify Ethyl was an undisclosed contractual obligation in existence prior to the closing date and not identified in the Asset Purchase Agreement and, therefore, MEMC was not required to indemnify Albemarle for its payment to Ethyl. This Court reversed the trial court, rendering judgment that Albemarle take nothing in its suit against MEMC. *MEMC Elec. Materials, Inc. v. Albemarle Corp.*, 241 S.W.3d 67, 76 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

In the instant suit, MEMC seeks attorney's fees and expenses from Albemarle for Albemarle's prosecution of an Excluded Obligation. MEMC and Albemarle filed cross-motions for summary judgment on the issue. The trial court denied MEMC's motion for summary judgment and granted Albemarle's motion. Due to confusion regarding the submission date for the motions, the trial court vacated its order and reconsidered the motions for summary judgment. The trial court reached the same decision, again denying MEMC's motion and granting Albemarle's motion.

### Issues Presented in this Appeal

■ In two issues, MEMC contends the trial court erred by granting Albemarle's motion for summary judgment and by denying MEMC's motion. As an initial matter, however, Albemarle contends that MEMC did not raise certain issues in its motion for summary judgment to the trial court and may not, therefore, raise them on appeal. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) (summary judgment motion "must stand or fall on the grounds expressly presented in the motion"). MEMC counters that the issues were raised before the trial court, either in its motion for summary judgment or in its motion for reconsideration. A ground for summary judgment included in a motion for reconsideration may be considered on appeal when the trial court granted the motion for reconsideration. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 88 n. 4 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Here, the trial court granted MEMC's motion for reconsideration, specifically noting that, due to confusion concerning the submission date, it had ruled without receiving complete briefing from the parties. Therefore, to the extent the grounds MEMC discusses on appeal were raised in its motion for summary judgment or its motion for reconsideration, we will consider these on appeal. *See id.*

### Albemarle's Suit on the Ethyl Contract

MEMC contends the trial court erred by refusing to find Albemarle liable for fees and costs that MEMC incurred in defend-

ing against "Albemarle's invalid claim to enforce the Ethyl contract." Within its two issues, MEMC asserts the trial court erred by denying its motion for summary judgment and granting a take-nothing summary judgment in favor of Albemarle. MEMC asserts that the trial court erred because this Court held Albemarle's claim for its indemnification under the Ethyl contract was a pre-Closing Date obligation and an Excluded Obligation, and "[t]his Court also found that Albemarle had breached its contractual warranties by suing on the undisclosed Ethyl Contract, which had not been assumed by MEMC." Concerning an award of attorney's fees, MEMC also contends the trial court erroneously stated that fees for a breach of contract were discretionary.

### A. Applicable Law

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence,* 164 S.W.3d at 661. When reviewing cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.,* 46 S.W.3d 880, 884 (Tex.2001).

 In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v.*

*Webster,* 128 S.W.3d 223, 229 (Tex.2003). We must consider the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* All the provisions of the contract must be considered with reference to the whole instrument and no single provision, taken alone, can be given controlling effect. *Id.*

### B. Terms of the Asset Purchase Agreement

Section 7.3 of the Asset Purchase Agreement states,

*[Albemarle's] Agreement to Indemnify.* Subject to the terms and conditions of this *Article 7,* [Albemarle] agrees to indemnify, defend and hold harmless MEMC and MEMC Pasadena from and against all Damages, asserted against, resulting to, imposed upon or incurred by MEMC or MEMC Pasadena, directly or indirectly (collectively, *"MEMC/MEMC Pasadena Claims"*), by reason of or resulting from:

(a) liabilities, obligations or claims, with respect to the Transferred Business or the Transferred Assets (whether absolute, accrued, contingent or otherwise) arising out of operations of the Transferred Business or the Transferred Assets prior to the Closing Date;

(b) liabilities with respect to Excluded Obligations;

(c) a breach of any representation, warranty or agreement of [Albemarle] contained in or made pursuant to this Agreement;

. . .

(h) any and all reasonable costs and expenses (including reasonable attorneys', accountants' and other professional fees and expenses) incurred by MEMC or MEMC Pasadena in connection with any Action, demand,

claims, assessment or judgment incident to any of the matters indemnified against under (a) through (g) above.

In addition to Section 7.3, the Asset Purchase Agreement contains Section 3.4(b) defining Excluded Obligations and Section 3.4(a) defining Assumed Obligations. Section 3.4(b) states, "Nothing herein, however, shall be deemed to prohibit [Albemarle] from contesting in good faith whether the claim, demand or Liability is an Excluded Obligation, Assumed Obligation, or otherwise." Section 3.4(a) provides, "MEMC Pasadena shall assume and agree and undertake in writing to pay, perform and discharge as and when due (although nothing herein shall be deemed to prohibit MEMC Pasadena from contesting in good faith any such item) the following Liabilities of [Albemarle] (collectively, *"Assumed Obligations"*):...."

Section 3.4, which allows the parties to contest in good faith whether an obligation is an Excluded Obligation or an Assumed Obligation, does not provide for attorney's fees or costs for the prevailing party in the event of a lawsuit. Similarly, the Asset Purchase Agreement does not contain a section providing for attorney's fees or costs in the event of a suit concerning the scope of the agreement or in the event of a breach of the agreement. The only section providing for attorney's fees and costs is Section 7.3(h) within the indemnification provision.

## C. Analysis of the Indemnification Agreement

MEMC contends that the trial court erred by rendering summary judgment for Albemarle because subsections (a), (b), and (c) of Section 7.3 of the Asset Purchase Agreement require Albemarle to indemnify MEMC. MEMC contends that it is entitled to attorney's fees for defending this suit under 7.3(h) of the Asset Purchase Agreement, which provides for "any and all reasonable costs and expenses (including reasonable attorneys', accountants' and other professional fees and expenses)" in connection with defending a claim under subsections (a), (b), and (c) of Section 7.3.

### 1. Section 7.3(a)—Pre-Closing Date Obligation

■ MEMC contends that Section 7.3(a) applies and requires Albemarle to indemnify MEMC for Albemarle's bringing suit for indemnification of its payment under the Ethyl contract. Specifically, Section 7.3(a) applies to "liabilities, obligations or claims, with respect to the Transferred Business or the Transferred Assets ... arising out of operations of the Transferred Business or the Transferred Assets prior to the Closing Date." MEMC contends that this Court "found that the Ethyl Contract was a pre-Closing Date obligation" and, therefore, Albemarle must indemnify MEMC for bringing this suit for a pre-Closing Date obligation."

MEMC misstates the applicable portion of this Court's opinion in the prior appeal. In the prior appeal, this Court specifically stated, "We conclude that the payment made to indemnify Ethyl was *not a liability, obligation or claim arising out of the operations of the plant,* but rather a payment that arose out of the prior contractual relationship between Albemarle and Ethyl." *MEMC Elec. Materials, Inc.,* 241 S.W.3d at 76 (emphasis added). Section 7.3(a) applies to claims "arising out of operations of the Transferred Business or the Transferred Assets." Because this Court concluded the Ethyl contract did not arise out of operations of the plant, Section 7.3(a) does not apply. The trial court properly rendered summary judgment in favor of Albemarle on this ground. We overrule this portion of MEMC's issues.

## 2. Section 7.3(b)—Excluded Obligation

 MEMC also contends that Section 7.3(b) applies and requires Albemarle to indemnify MEMC for Albemarle's bringing suit for indemnification of its payment under the Ethyl contract. Section 7.3(b) requires Albemarle to indemnify MEMC for "liabilities with respect to Excluded Obligations." In the opinion in the prior appeal, this Court did state that the Ethyl contract is an Excluded Obligation. Therefore, read in isolation, Section 7.3(b) appears to support MEMC's contention.

However, as stated above, we cannot read a provision of a contract in isolation; we must consider the whole instrument to harmonize the provisions and ascertain the parties' intent. See J.M. Davidson, Inc., 128 S.W.3d at 229. Here Section 3.4 of the contract specifically allows either party to contest, "in good faith," whether a particular obligation is an Excluded Obligation or an Assumed Obligation. Albemarle expressly raised this contract provision in the summary judgment proceedings before the trial court. MEMC did not respond or otherwise address the good faith contest provisions of Section 3.4. In its order granting Albemarle's motion, the trial court stated that both MEMC and Albemarle had a "good faith basis" for their claims.

On appeal, MEMC contends, without citation to any relevant authority, that the Asset Purchase Agreement "afforded no excuse for Albemarle's 'good faith' lawsuit," and that "[t]o read such a 'good faith dispute' clause into the Asset Purchase Agreement effectively renders [the indemnity] clause meaningless." First, we note that the Asset Purchase Agreement expressly provides for a good faith contest of whether an obligation is an Assumed Obligation or Excluded Obligation; neither the trial court nor this Court are "reading" it into the contract. Furthermore, MEMC's

arguments concerning the "good faith" provisions of the Asset Purchase Agreement are raised for the first time in its brief in this appeal. Because MEMC did not assert these arguments in its motion for summary judgment or its response to Albemarle's motion for summary judgment, it cannot serve as a basis to reverse the trial court's judgment. See TEX.R. CIV. P. 166a(c); McConnell, 858 S.W.2d at 341. We overrule this portion of MEMC's issues.

## 3. Section 7.3(c)—Breach of Representation or Warranty

 MEMC contends that Section 7.3(c) applies and requires Albemarle to indemnify MEMC for Albemarle's bringing suit for indemnification of its payment under the Ethyl contract. Specifically, MEMC contends that the trial court "ignored the First Court's findings that Albemarle breached its representations and warranties." MEMC similarly states that "this Court concluded that Albemarle had breached its contractual representations and warranties by failing to disclose the Ethyl Contract." However, this Court did not hold that Albemarle breached any warranties under the Asset Purchase Agreement. In construing the entire Asset Purchase Agreement, this Court looked to Section 4.16 concerning Albemarle's representations and warranties concerning existing contracts. We noted that the Assumed Obligations did not include any undisclosed contract. In concluding the discussion concerning Section 4.16, this Court stated,

> We also conclude that Albemarle failed to disclose in Section 4.16 the indemnity agreement it had with its affiliate, Ethyl. Albemarle's failure to disclose its indemnity agreement with Ethyl suggests that MEMC was not aware of that agree-

ment and did not obligate itself to cover any liability imposed under that agreement. We conclude that terms of Section 4.16 support MEMC's position that it is not obligated for the indemnity agreement between Albemarle and Ethyl.

241 S.W.3d at 73. Contrary to MEMC's assertion in this appeal, this Court did not hold Albemarle had breached a warranty, but concluded that Section 4.16 supported the conclusion that the Ethyl contract was not an Assumed Obligation. We did not address in our prior opinion whether the failure to disclose that the Ethyl contract was an existing obligation violated the agreement between MEMC and Albemarle. Because this is the only ground asserted on the breach of warranty issue, the trial court did not err by rendering summary judgment for Albemarle on this ground. We overrule this portion of MEMC's issues.

Having concluded the trial court properly rendered summary judgment on Section 7.3, subsections (a), (b), and (c), MEMC was not entitled to attorney's fee under Section 7.3(h). We hold the Asset Purchase Agreement does not provide for indemnification of "good faith" claims between MEMC and Albemarle concerning the scope and meaning of the agreement. *See MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63 (Tex.App.-San Antonio 2005, pet. denied) (stating indemnity agreements generally relate to claims brought by third-parties and "do[ ] not apply to claims between the parties to the agreement").

### D. Breach of Contract

█ As noted in the discussion of Section 7.3(c) above, MEMC contends that the trial court erred by rendering summary judgment in favor of Albemarle when it "ignored the First Court's findings that Albemarle breached its representations and warranties." As discussed above, MEMC misstates the opinion in the prior appeal. Therefore, the trial court did not err by rendering summary judgment for Albemarle on this ground.

MEMC also contends that trial court erred because it stated the award of attorney's fees for breach of contract under section 38.001 of the Civil Practice and Remedies Code is discretionary. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2008). Section 38.001 provides for attorney's fees for a prevailing party in a breach of contract case. *See id.; see also Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding award of attorney's fees to party prevailing on contract claim is mandatory under section 38.001 if there is proof of the reasonableness of the fees). Because we conclude the trial court properly denied MEMC's motion for summary judgment on its breach of contract claim, MEMC was not entitled to attorney's fees. *See Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 77 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (stating to obtain attorney's fees party must both prevail and recover damages). Therefore, the error, if any, in the trial court's treating attorney's fees under section 38.001 as discretionary is harmless.

### *Damewood* Litigation

In the second portion of its appellate brief, MEMC contends the trial court erred in refusing to award MEMC the fees and costs incurred in defending against the *Damewood* litigation as well. Specifically, MEMC contends it is entitled to indemnity for the *Damewood* litigation because Section 3.4(b)(vii) of the Asset Purchase Agreement provides that "any Liabilities of Seller relating to Employees" are Excluded Obligations. We have reviewed

both MEMC's motion for summary judgment and its motion for reconsideration and this ground is not mentioned in either motion. Therefore, it may not serve as a basis to reverse the trial court's judgment. *See* TEX.R. CIV. P. 166a(c); *McConnell,* 858 S.W.2d at 341.

### Conclusion

We overrule MEMC's two issues. We affirm the judgment of the trial court.