**Opinion issued May 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00204-CV

———————————

**PHONG TRINH, Appellant**

**V.**

**FATHA ELMI AND MED SOLUTIONS PHARMACY, INC., Appellees**

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2011-16459

## MEMORANDUM OPINION

Appellant, Phong Trinh sued appellees, Fatha Elmi and Med Solutions Pharmacy, Inc. for breach of contract, fraud, breach of fiduciary duty, and quantum meruit based on an alleged breach of a partnership agreement. Based on the jury's

answers to the questions in the jury charge, the trial court entered judgment awarding Trinh $2,500 in damages on his quantum meruit claim but no damages on his breach of contract, fraud, or breach of fiduciary duty claims, or an award of attorney's fees. In his first and second issues, Trinh contends that the trial court erred in rendering judgment awarding him no damages on his breach of contract claim or recovery of attorney's fees because the award was outside the range of evidence or, alternatively, against the great weight and preponderance of the evidence. In his third issue, he argues that the trial court erred in rendering judgment awarding him no attorney's fees because he prevailed on his quantum meruit claim and was, therefore, entitled to recover his reasonable attorney's fees. We affirm in part, and reverse and remand in part.

**Background**

In 2009, Trinh worked as an office manager for Dr. Bui, an obstetrical gynecologist. Elmi, a pharmacist, owned a pharmacy called Med Solutions located near Dr. Bui's practice. In mid to late 2009, Trinh and Elmi discussed opening a new pharmacy in the same building as Dr. Bui's practice.[1] Mitzi Rivero, a transactional attorney, drafted an agreement for the parties' new pharmacy which was to be called BioMed. Elmi and Trinh, however, decided not to open BioMed

---

[1] Dr. Bui owned the building on Jones Road in which her practice was located.

2

and opted instead to re-locate Elmi's existing pharmacy, Med Solutions, next to Dr. Bui's practice.

Trinh testified that, in early 2010, he and Elmi orally agreed that Trinh would purchase a 40% interest in Med Solutions for $30,000. Trinh further testified that he paid $10,000 to Elmi, and that he and Elmi agreed that Trinh would pay the remaining $20,000 once they signed a contract. According to Trinh, he was responsible for the build-out of the pharmacy in the new building and spent his own money to buy security cameras for the pharmacy, a safety film for the front door, and some shelving.

In August 2010, Med Solutions relocated next to Dr. Bui's practice. Trinh testified that he agreed that Elmi could retain 100% of Med Solutions's earnings that month due to the financial hardship of relocating the pharmacy. When Elmi told him that she was still having financial difficulties, he agreed that she could retain 100% of the pharmacy's profits for September. According to Trinh, of the $25,000 in net profits that Med Solutions earned in October 2010, he received $10,000 and Elmi received $15,000. Trinh testified, however, that when he met with Elmi in November 2010, she ousted him from the partnership and refused to re-purchase his 40% ownership interest in the pharmacy.

Elmi testified that she never entered into a verbal agreement to make Trinh a partner in Med Solutions. According to Elmi, although she and Trinh discussed

the possibility of his purchasing 40% of Med Solutions for $30,000, they never entered into an agreement. Elmi testified that Trinh paid her $10,000 but that she later returned the $10,000 to him.

Rivero testified that in December 2009, Trinh contacted her to request that she set up BioMed as a limited liability company. In August 2010, Trinh sent her an email, on which he copied Elmi, asking Rivero to instead prepare a new contract for them for Med Solutions. On September 30, 2010, Rivero met with Trinh and Elmi to discuss possible ways to structure a transfer of 40% stock in Med Solutions to Trinh. Rivero testified that the September 30, 2010 meeting was an initial meeting to begin negotiations and to discuss different ways in which the parties might structure the transaction but that there was no discussion regarding how the $30,000 would be paid. Rivero testified that she never prepared a stock purchase agreement, a promissory note, a security agreement, or a stock issuance for Med Solutions.

Trinh's expert witness, Bryne Liner, testified that Trinh incurred between $554,168 and $590,614 in economic damages based on a 40% share of the pharmacy's fair market value and of its profits from November 2010 to the date of trial. Trinh's expert witness, Paul Simon, testified that Trinh's attorney's fees based on the contingency fee agreement entered into between Trinh and Simon's firm was either $277,084 or $295,307, depending on the damages award, or

$244,283.75 based on his firm's hourly rates. He further testified that the firm's costs were $13,943.09, and that $25,000 was a reasonable appellate fee.

The jury returned its verdict awarding Trinh $2,500 on his quantum meruit claim but awarding no damages on his claims for breach of contract, fraud, and breach of fiduciary duty, or recovery of attorney's fees. Trinh subsequently filed motions for entry of judgment notwithstanding the verdict and for new trial which the trial court denied. Trinh timely filed this appeal.

## Breach of Contract Claim

In his first two issues, Trinh contends that the trial court erred in rendering judgment on the jury's verdict awarding him no damages on his breach of contract claim and no attorney's fees based on this claim. He argues that because the jury found that a partnership agreement existed, appellees had breached that agreement, and Trinh's expert witnesses provided uncontroverted testimony regarding Trinh's damages and attorney's fees, the jury's award of no damages or attorney's fees is outside the range of evidence or, alternatively, against the great weight and preponderance of the evidence.

At the outset, we note that the parties dispute the meaning of the jury's answers to the questions in the jury charge. Specifically, Trinh contends that the jury's answers to Questions 1 and 2 clearly demonstrate that the jury found that a partnership agreement existed and that appellees breached it. Appellees, however,

5

argue that the jury's answers to those questions represent a finding that although the parties had agreed to form a partnership, a partnership agreement was never consummated.

To address these arguments, we must review the jury's findings. When reviewing jury findings, we must try to interpret them in a manner that supports the judgment. *Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court's duty, and ours, is to ascertain the intention of the jury's answers, harmonize or reconcile the answers and issues, and render a judgment in conformity with them. *Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726, 733 (Tex. App.—Amarillo 2001, no pet.) (citing *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 739 (1941)). To do so, we may examine the record in order to ascertain the jury's intent. *Mintzer*, 417 S.W.3d at 696.

Questions 1 and 2 asked the jury as follows:

**<u>Question No. 1</u>**

Did either of the parties listed below agree with Trinh that Trinh would own a 40% interest in the pharmacy?

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thought or intentions.

6

Answer "Yes" or "No" for each of the following:

    a) Elmi:                <u>Yes</u>

    b) The Pharmacy:    <u>Yes</u>

## Question No. 2

Did either of the parties listed below fail to comply with the agreement?

Answer "Yes" or "No" for each of the following:

    a) Elmi:                <u>Yes</u>

    b) The Pharmacy:    <u>Yes</u>

The jury awarded no damages to Trinh on his breach of contract claim.

Trinh contends that the jury was not free to ignore the uncontroverted expert testimony of Trinh's economic damages "because the evidence conclusively established those amounts, subject only to the jury finding (as it did) of the existence of a partnership agreement that Appellees breached." Appellees argue, however, that the jury's answer to Question No. 1—that appellees agreed with Trinh that Trinh would own a 40% interest in the pharmacy—evidences only that the parties agreed that they would enter into a partnership agreement but that an agreement was never consummated.

Our review of the record leads us to conclude that the jury's answers, while seemingly conflicting, are not irreconcilable. At trial, Trinh testified that he entered into an agreement with Elmi under which he was to pay Elmi $30,000 for a

7

40% ownership interest in the pharmacy, he only paid Elmi $10,000, and Elmi never conveyed the interest in the pharmacy to him. In its answer to Question No. 1, the jury found that the parties had reached an agreement that Trinh would own a 40% interest in the pharmacy; however, the jury was never asked about Trinh's concomitant obligations under the agreement. *See* Texas Pattern Jury Charges, Business Consumer Insurance Employment PJC 101.1 (2012) (question asking jury about existence of agreement should include disputed terms of agreement). Although the jury found that Elmi breached the agreement presumably when she failed to convey the ownership interest to Trinh (Question No. 2), it could also have found that a partnership was never created because Trinh did not perform his obligations under the agreement (Question No. 13). Thus, the jury could have determined that there was an agreement and that Elmi breached the agreement but that Trinh was not entitled to damages because he did not perform his obligations under the agreement. *See Cooper v. Lyon Fin. Svcs., Inc.*, 65 S.W.3d 197, 204 n.5 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (concluding jury answers favorable to party on liability and answers of zero dollars on damages did not put answers in conflict); *Am. Recreational Mkts. Gen. Agency, Inc. v. Hawkins*, 846 S.W.2d 476, 478 (Tex. App.—Houston [14th Dist.] 1993, no writ) (noting finding favorable to party on liability does not render conflict with finding of zero damages). The jury's answers are not irreconcilable; rather, they are consistent

8

with the evidence. *Mintzer*, 417 S.W.3d at 697 (noting that when reviewing jury findings, courts must try to interpret them in manner that supports judgment).[2] Our conclusion is further supported when we consider the question the jury submitted to the court during its deliberations—"In [the] State of Texas[,] at what point does a verbal agreement become binding/effective? Does full cash consideration as defined in the verbal agreement have to be made for the agreement to become a legal contract?"

The jury's award of no damages to Trinh on his breach of contract claim and no award of attorney's fees based on this claim were neither outside the range of evidence nor against the great weight and preponderance of the evidence. Consequently, the trial court did not err in rendering judgment on the jury's verdict. We overrule Trinh's first and second issues.

---

[2]  The jury also awarded Trinh $2,500 in damages on his quantum meruit claim against Med Solutions. Quantum meruit is an equitable remedy that allows payment for beneficial services rendered and knowingly accepted in the absence of an explicit contract. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Thus, when the parties themselves create a valid contract, there can be no recovery under a contract implied by law. *Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Here, although the quantum meruit questions were not predicated in the charge, the jury's findings in Trinh's favor on his quantum meruit claim against Med Solutions and its award of $2,500 damages for compensable work performed by him are consistent with evidence offered at trial that Trinh performed work in anticipation of the pharmacy's relocation and may also explain the jury's award of no damages on Trinh's breach of contract claim. *See id.* at 697.

**Attorney's Fees Based on Quantum Meruit Claim**

In his third issue, Trinh contends that he is entitled to attorney's fees of at least $244,283.75, plus $13,943.09 in costs, because he prevailed on his quantum meruit claim and presented uncontradicted evidence regarding the reasonableness and necessity of the fees. Elmi argues that the jury was entitled to disbelieve the uncontradicted testimony of Trinh's expert and award no attorney's fees.

A party may recover reasonable attorney's fees if it prevails and recovers damages on a cause of action for which attorney's fees are recoverable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 1997); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Section 38.001 of the Civil Practice and Remedies Code authorizes the award of attorney's fees in a suit for quantum meruit. *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex. App.—El Paso 2004, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (1)-(3) (stating that person may recover reasonable fees in addition to amount of valid claim and costs if claim is for services rendered, performed labor, or furnished material). An award of attorney's fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees. *See MEMC Elec. Materials, Inc. v. Albemarle Corp.*, 318 S.W.3d 405, 413 (Tex. App.—[1st Dist.] 2010, no pet.) (citing *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

The reasonableness of attorney's fees is ordinarily left to the factfinder, and a reviewing court may not substitute its judgment for the jury's. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). In awarding attorney's fees, the trial court must take into account various factors such as the nature and complexity of the case; the nature of the services provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). In *Arthur Andersen & Co. v. Perry Equipment Co.*, 945 S.W.2d 812 (Tex. 1997), the Texas Supreme Court added the corollary that the factfinder should consider "the amount involved and the results obtained," among other things. *Id.* at 818.

Although uncontroverted testimony about attorney's fees by an interested party may be established as a matter of law under some circumstances, uncontroverted testimony that "is unreasonable, incredible, or its belief is questionable," "only raise[s] a fact issue to be determined by the trier of fact." *Smith*, 296 S.W.3d at 547–48 (quoting *Ragsdale*, 801 S.W.2d at 882). In such cases, the reviewing court should remand for a new trial on attorney's fees. *See Smith*, 296 S.W.3d at 548–49.

Here, Trinh sought at least $244,283.75 in attorney's fees based on his firm's hourly rate, as well as $13,943.09 in costs, and $25,000 in appellate fees, but the jury awarded nothing. As the prevailing party, Trinh is entitled to a recovery of fees based on his quantum meruit claim. *See Cordova*, 148 S.W.3d at 446; *see also MEMC Elec. Materials, Inc.*, 318 S.W.3d at 413 (noting award of reasonable attorney's fees is mandatory under section 38.001). However, the amount of requested fees is unreasonable in light of the amount involved and the results obtained. *See Smith*, 296 S.W.3d at 548. Therefore, Trinh has not established that he is entitled to an award of attorney's fees as a matter of law. *See id.* at 548–49.

We reverse the portion of the trial court's judgment as to attorney's fees and remand that part of the case for a new trial.

## Conclusion

We reverse and remand for a new trial on the question of attorney's fees based on Trinh's quantum meruit claim, and affirm the trial court's judgment in all other respects.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

12