**Opinion issued September 24, 2015**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-14-00204-CV

—————————————

## PHONG TRINH, Appellant

## V.

## FATHA ELMI AND MED SOLUTIONS PHARMACY, INC., Appellees

———

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-16459**

———

# MEMORANDUM OPINION ON REHEARING[1]

---

[1]     We originally issued our opinion in this appeal on May 28, 2015. Appellant, Phong Trinh, filed a motion for rehearing. We grant the motion for rehearing, withdraw our May 28, 2015 opinion, vacate our judgment, and issue this opinion and the related judgment in their stead.

Appellant, Phong Trinh, sued appellees, Fatha Elmi and Med Solutions Pharmacy, Inc., for breach of contract, fraud, breach of fiduciary duty, and quantum meruit based on an alleged breach of a partnership agreement. Based on the jury's answers to the questions in the jury charge, the trial court entered judgment awarding Trinh $2,500 in damages on his quantum meruit claim but no damages on his breach of contract, fraud, or breach of fiduciary duty claims, or an award of attorney's fees. In his first and second issues, Trinh contends that the trial court erred in rendering judgment awarding him no damages on his breach of contract claim or recovery of attorney's fees because the award was outside the range of evidence or, alternatively, against the great weight and preponderance of the evidence. In his third issue, he argues that the trial court erred in rendering judgment awarding him no attorney's fees because he prevailed on his quantum meruit claim and was, therefore, entitled to recover his reasonable attorney's fees. We reverse and remand.

## Background

In 2009, Trinh worked as an office manager for Dr. Bui, an obstetrical gynecologist. Elmi, a pharmacist, owned a pharmacy called Med Solutions located near Dr. Bui's practice. In mid to late 2009, Trinh and Elmi discussed opening a new pharmacy in the same building as Dr. Bui's practice.[2] Mitzi Rivero, a

---

[2] Dr. Bui owned the building on Jones Road in which her practice was located.

transactional attorney, drafted an agreement for the parties' new pharmacy which was to be called BioMed. Elmi and Trinh, however, decided not to open BioMed and opted instead to relocate Elmi's existing pharmacy, Med Solutions, next to Dr. Bui's practice.

Trinh testified that, in early 2010, he and Elmi orally agreed that Trinh would purchase a 40% interest in Med Solutions for $30,000. Trinh further testified that he paid $10,000 to Elmi, and that he and Elmi agreed that Trinh would pay the remaining $20,000 once they signed a contract. According to Trinh, he was responsible for the build-out of the pharmacy in the new building and spent his own money to buy security cameras for the pharmacy, a safety film for the front door, and some shelving.

In August 2010, Med Solutions relocated next to Dr. Bui's practice. Trinh testified that he agreed that Elmi could retain 100% of Med Solutions's earnings that month due to the financial hardship of relocating the pharmacy. When Elmi told him that she was still having financial difficulties, he agreed that she could retain 100% of the pharmacy's profits for September. According to Trinh, of the $25,000 in net profits that Med Solutions earned in October 2010, he received $10,000 and Elmi received $15,000. Trinh testified, however, that when he met with Elmi in November 2010, she ousted him from the partnership and refused to re-purchase his 40% ownership interest in the pharmacy.

3

Elmi testified that she never entered into an oral agreement to make Trinh a partner in Med Solutions. According to Elmi, although she and Trinh discussed the possibility of Trinh purchasing 40% of Med Solutions for $30,000, they never entered into an agreement. Elmi testified that Trinh paid her $10,000 but that she later returned the $10,000 to him.

Rivero testified that in December 2009, Trinh contacted her to request that she set up BioMed as a limited liability company. In August 2010, Trinh sent her an email, on which he copied Elmi, asking Rivero to instead prepare a new contract for them for Med Solutions. On September 30, 2010, Rivero met with Trinh and Elmi to discuss possible ways to structure a transfer of 40% stock in Med Solutions to Trinh. Rivero testified that the September 30, 2010 meeting was an initial meeting to begin negotiations and to discuss different ways in which the parties might structure the transaction but that there was no discussion regarding how the $30,000 would be paid. Rivero testified that she never prepared a stock purchase agreement, a promissory note, a security agreement, or a stock issuance for Med Solutions.

Trinh's expert witness, Bryne Liner, testified that Trinh incurred between $554,168 and $590,614 in economic damages based on a 40% share of the pharmacy's fair market value and of its profits from November 2010 to the date of trial. Trinh's expert witness, Paul Simon, testified that Trinh's attorney's fees

4

based on the contingency fee agreement entered into between Trinh and Simon's firm was either $277,084 or $295,307, depending on the damages award, or $244,283.75 based on his firm's hourly rates. He further testified that the firm's costs were $13,943.09, and that $25,000 was a reasonable appellate fee.

The jury returned its verdict awarding Trinh $2,500 on his quantum meruit claim but awarding no damages on his claims for breach of contract, fraud, and breach of fiduciary duty, or recovery of attorney's fees. Trinh subsequently filed motions for entry of judgment notwithstanding the verdict and for new trial which the trial court denied. Trinh timely filed this appeal.

**Discussion**

In his first two issues, Trinh contends that the trial court erred in rendering judgment on the jury's verdict awarding him no damages on his breach of contract claim and no attorney's fees based on this claim. He argues that because the jury found that a partnership agreement existed, appellees had breached that agreement, and Trinh's expert witnesses provided uncontroverted testimony regarding Trinh's damages and attorney's fees, the jury's award of no damages or attorney's fees is outside the range of evidence or, alternatively, against the great weight and preponderance of the evidence.

5

## A. Breach of Contract Claim

At the outset, we note that the parties dispute the meaning of the jury's answers to the questions in the jury charge. Specifically, Trinh contends that the jury's answers to Questions 1 and 2 clearly demonstrate that the jury found that a partnership agreement existed and that appellees breached it. Appellees, however, argue that the jury's answers to those questions represent a finding that although the parties had agreed to form a partnership, a partnership agreement was never consummated.

To address these arguments, we must review the jury's findings. When reviewing jury findings, we must try to interpret them in a manner that supports the judgment. *Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court's duty, and ours, is to ascertain the intention of the jury's answers, harmonize or reconcile the answers and issues, and render a judgment in conformity with them. *Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726, 733 (Tex. App.—Amarillo 2001, no pet.) (citing *State v. Hale*, 146 S.W.2d 731, 739 (1941)). "To do so, we may examine the record in order to ascertain the jury's intent." *Mintzer*, 417 S.W.3d at 696. "We may not, however, speculate about what the jury intended in reaching a particular verdict or create certainty out of jury findings that are ambiguous." *Id.*

Questions 1 and 2 asked the jury as follows:

## Question No. 1

Did either of the parties listed below agree with Trinh that Trinh would own a 40% interest in the pharmacy?

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thought or intentions.

Answer "Yes" or "No" for each of the following:

a) Elmi:                    Yes

b) The Pharmacy:      Yes

## Question No. 2

Did either of the parties listed below fail to comply with the agreement?

Answer "Yes" or "No" for each of the following:

a) Elmi:                    Yes

b) The Pharmacy:      Yes

The jury, however, awarded no damages to Trinh on his breach of contract claim.

Trinh contends that the jury was not free to ignore the uncontroverted expert testimony of Trinh's economic damages "because the evidence conclusively established those amounts, subject only to the jury finding (as it did) of the existence of a partnership agreement that Appellees breached." Appellees argue, however, that the jury's answer to Question No. 1—that appellees agreed with

7

Trinh that Trinh would own a 40% interest in the pharmacy—evidences only that the parties agreed that they would enter into a partnership agreement but that an agreement was never consummated. This is so, they argue, because the jury could have found that the signing of formal documents and Trinh's payment of the remaining $20,000 to appellees were conditions precedent to their obligation to perform under the agreement, or that Trinh's failure to pay the $20,000 excused appellees' non-performance.[3] Appellees, however, did not plead a condition precedent or that Trinh breached the agreement first, nor did they present any evidence at trial in support of either ground or request that a question or instruction be included in the jury charge.[4] In failing to do so, appellees waived these arguments. *See* TEX. R. CIV. P. 94, 278 & 279; *Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980) (Texas Rule of Civil Procedure 94 requires all matters constituting avoidance or affirmative defense be pleaded to give opposing party notice of defensive issues to be tried; failure to do so results in waiver of affirmative defense); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d

---

[3] Notably, the jury submitted the following question to the court during deliberations: "In [the] State of Texas[,] at what point does a verbal agreement become binding/effective? Does full cash consideration as defined in the verbal agreement have to be made for the agreement to become a legal contract?"

[4] A judgment must conform to the pleadings unless the issue is tried by express or implied consent in which case the issue will be treated as if it had been pleaded. *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A review of the record reflects no evidence that appellees tried the issue of Trinh's alleged failure to perform his obligations under the contract by consent, nor do appellees make this argument.

804, 816 (Tex. App.—Dallas 2003, pet. denied) (concluding issues raised by builder on appeal in breach of contract action were waived where builder failed to plead issues as affirmative defenses and failed to request proper jury questions); *accord Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Because the jury found that an agreement existed and that appellees breached that agreement, Trinh was entitled to recover under a breach of contract theory. Trinh, however, cannot recover in quantum meruit. *Mintzer*, 417 S.W.3d at 695 ("A party generally cannot recover under *quantum meruit* where there is a valid contract covering the services or materials furnished.") (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)).[5]

## B. Economic Damages and Attorney's Fees

Trinh contends that the trial court erred in rendering judgment awarding him no damages on his breach of contract claim or recovery of attorney's fees based on that claim because the award was outside the range of evidence or, alternatively, against the great weight and preponderance of the evidence. In his motion for judgment notwithstanding the verdict, Trinh argued that in light of the jury's answers that an agreement existed and appellees breached it, the jury was required

---

[5] There are several exceptions to this general rule, however, none of them apply here. *See Bluelinx Corp. v. Tex. Const. Sys., Inc.*, 363 S.W.3d 623, 627 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

to award Trinh at least $554,166 in damages and at least $295,083 in attorney's fees because the evidence established at least those amounts as a matter of law. The trial court denied Trinh's motion.

A jury has broad discretion to award damages within the range of evidence presented at trial. *See Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (noting that when evidence presented at trial supports range of damages, jury has discretion to award damages within that range "so long as a rational basis exists for the jury's calculation"). However, a jury "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted," but was not controverted. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). When a precise method for assessing damages is presented, the jury may not arbitrarily assess an amount that is not authorized or supported by the evidence. *First State Bank v. Keilman*, 851 S.W.2d 914, 930–31 (Tex. App.—Austin 1993, writ denied). In other words, the verdict must fall within the range of the evidence presented, and a jury may not "pull figures out of a hat" in assessing damages. *See CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A jury's finding may be disregarded if the amount assessed "was not the result of a deliberate and conscientious

conviction in the minds of the jury and the court." *Keilman*, 851 S.W.2d at 930–31 (quotation omitted).

"The general rule is that opinion testimony, even when uncontroverted, does not bind the jury unless the subject matter is one for experts alone." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998). A subject matter is considered one for experts or skilled witnesses alone when "the jury or court cannot properly be assumed to have or be able to form correct opinions of their own based upon evidence as a whole and aided by their own experience and knowledge of the subject of inquiry." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Michaelski v. Wright*, 444 S.W.3d 83, 95 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

At trial, Trinh's damages expert, Bryne Liner, testified that Trinh's economic damages consisted of: (1) 40% of the pharmacy's profits from November 2010 through the date of trial that Trinh never received, and (2) Trinh's ownership interest in the pharmacy itself, i.e., 40% of its present-day fair market value.[6] To calculate the profit component, Liner reviewed the pharmacy's general ledgers, profit and loss statements, bank statements, and average wholesale price

---

[6] Trinh asserts that Liner's testimony regarding the pharmacy's profits and its present-day fair market value is the province of expert testimony alone and, therefore, Liner's testimony was established as a matter of law. Appellees do not challenge this assertion and further stipulated at trial that Liner was an expert qualified to testify regarding Trinh's alleged damages.

("AWP") summary sales reports. Applying generally accepted accounting principles and industry standards to the business records produced by appellees, Liner concluded that 40% of the pharmacy's profits from November 2010 through the date of trial equaled $401,039. The financial data Liner reviewed as well as the written summary of Liner's conclusions were admitted at trial without objection. Appellees presented no expert to contradict Liner's testimony nor did they contest Liner's methodology, professional judgments, the accuracy or reliability of his conclusions, or his calculations.

With regard to Trinh's ownership interest, Liner testified that he reviewed the pharmacy's bank statements and the AWP monthly summaries to determine the pharmacy's total revenue for the relevant time period. Liner then applied a common industry multiplier to calculate two reasonable fair market values for the pharmacy. Based on a 40% ownership interest, Liner calculated that Trinh's share of the pharmacy's fair market value was between $153,129 and $189,575. Liner's written summary of his conclusions was admitted without objection and appellees did not offer any evidence contradicting Liner's methodology or calculations. Based on these two components, Liner testified that Trinh's total economic damages were between $554,168 and $590,614.

A party may also recover reasonable attorney's fees if it prevails and recovers damages on a cause of action for which attorney's fees are recoverable.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Section 38.001 of the Civil Practice and Remedies Code authorizes the award of attorney's fees in a suit based on a written or oral contract. *See* CIV. PRAC. & REM. CODE ANN. § 38.001 (8). An award of attorney's fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees. *See MEMC Elec. Materials, Inc. v. Albemarle Corp.*, 318 S.W.3d 405, 413 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "The reasonableness of attorney's fees is ordinarily left to the factfinder, and a reviewing court may not substitute its judgment for the jury's." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009).

Trinh's attorney's fees expert, Paul Simon, testified as to the standard hourly rate for the attorneys working on the case as well as the contingency fee agreement into which Trinh and Simon's firm had entered.[7] Simon also testified about the nature of the work his firm performed in the case, the methodology of calculating his firm's contingency fee, and that the fees and costs were reasonable and necessary for the work performed. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (trial court must take into account various factors

---

[7] Appellees stipulated that Simon was qualified to testify on the subject of Trinh's attorney's fees.

such as nature and complexity of case, nature of services provided, time required for trial, amount of money involved, client's interest at stake, responsibility imposed upon counsel, and skill and expertise required). Simon's summaries of Trinh's legal invoices based on hourly rates, which were admitted into evidence without objection, showed that Trinh's attorneys spent 804.55 hours prosecuting Trinh's claims. Simon testified that Trinh's attorney's fees based on the contingency fee agreement would be $277,084 or $295,307 (depending on which end of the damage range the jury found), in addition to expenses of $13,943.09. Appellees did not object to Simon's testimony regarding the amount, reasonableness, or necessity of the attorney's fees and costs incurred, cross-examine Simon, or offer any evidence controverting the reasonableness and necessity of Trinh's attorney's fees and costs.

In sum, the jury found that an agreement existed and that appellees breached that agreement; therefore, Trinh was entitled to recover under a breach of contract theory. The uncontroverted evidence established that Trinh incurred some amount of damages on his breach of contract claim and attorney's fees based on that claim and, therefore, the jury's award of no damages on his breach of contract claim and no attorney's fees based on that claim is against the great weight and preponderance of the evidence. *See Doctor v. Pardue*, 186 S.W.3d 4, 17 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (noting jury's verdict will be upheld

14

unless it is so against great weight and preponderance of evidence as to be manifestly unjust or shocking to conscience). Having concluded that the trial court erred in rendering judgment on the jury's verdict awarding Trinh no damages on his breach of contract claim and no attorney's fees based on that claim, we sustain Trinh's second issue.[8] As previously noted, Trinh cannot recover in quantum meruit where a valid agreement exists, and therefore, we overrule his third issue related to the recovery of attorney's fees based on that claim. Finally, because appellees dispute liability, and Trinh's damages constitute unliquidated damages, we may not order a separate trial solely on those damages. *See* TEX. R. APP. P. 44.1(b) ("The court [of appeals] may not order a separate trial solely on unliquidated damages if liability is contested."); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001). Instead, we must remand for a new trial on both liability and damages. *Dillon*, 44 S.W.3d at 562; *Minn. Min. & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 740 (Tex. 1997); *CCC Grp., Inc.*, 450 S.W.3d at 203.

## Conclusion

We reverse the trial court's judgment and remand the cause for a new trial.

---

[8] In light of our disposition, we need not address Trinh's first issue. *See* TEX. R. APP. P. 47.1.

15

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.